# No. 23-484-cv

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

Keisha Reynolds,

*Plaintiff-Appellant,*

v.

HNS Management Co., Inc, DBA CTTransit,

*Defendant-Appellee.*

*On Appeal from an Order of the*

*United States District Court for Connecticut*

**BRIEF OF APPELLANT**

Dr. Kissinger N. Sibanda, Esq.

LAW OFFICE OF KISSINGER N. SIBANDA, PLLC

P.O. Box 714, Livingston, NJ  07039

Tel:  862-250-9684

# TABLE OF CONTENTS

**Page**

Table of Authorities…………………………………………………………………ii

PRELIMINARY STATEMENT..........................................................................7

JURISDICTIONAL STATEMENT……………...……………………………7

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW..........................8

DEEP ISSUES......................................................................................................8

STATEMENT OF THE CASE……………………………………………...9

    A. The Nature of the Case……………………………………………9

    B. The Course of Proceedings and Disposition Below……………..…9

    C. Summary Judgment And Surviving Claims…………………………18

STATEMENT OF FACTS…………………………………………………..10

SUMMARY OF THE ARGUMENT…………………………………………..20

STANDARD OF REVIEW……………………………………………………23

ARGUMENT………………………...……………………………………26

REQUEST FOR ORAL ARGUMENT…………………………………………...35

CONCLUSION…………………………………………..………………………….33

# TABLE OF AUTHORITIES

**CASES**                                                                                                    **Page(s)**

*American Mfrs. Mutual Ins. Co. v. American Broadcasting-Paramount Theatres,*

*Inc.,* 388 F.2d 272 (2d Cir. 1967)………………………………………………34

*Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 247-48 (1986)…………………...18

*Bolling v. Sharpe*, 347 U.S. 497 (1954)………………………………………...…37

*Breslow v. Schlesinger*, 284 F.R.D. 78, 82 (E.D.N.Y.)…………………………..24

*Castro v. Bank of New York Mellon,* 852 F. App'x 25, 30 (2d Cir. 2021)………..33

*Crews v. Cty. of Nassau*, 149 F. Supp. 3d 287, 292 (E.D.N.Y. 2015)……………24

*Daniel Reynolds v. Denis McDonough.,* Case No. 17-CV-5711 (JMW)……*passum*

*DLC Mgmt. Corp. v. Town of Hyde Park*,

163 F.3d 124, 134(2d Cir. 1998)………………………………………………….35

*Fincher v. Depository Trust & Clearing Corp.,*

*604 F.3d 712, 725 (2d Cir. 2010)……………………………………………...28*

*Hodges v. Police officers*, 802 F. 2d 58, 61 (2d Cir. 1986)………………………35

*Jaroslawicz v. Seedman, 528 F.2d 727, 731 (2d Cir. 1975)……………………....34*

*Juliao v. Charles Rutenberg Realty, Inc.,* No. 14-CV-808 (JMA) (AYS),

2020 WL 2513443, at * 2 (E.D.N.Y. May 15, 2020)……………………………23

*Tyson v. City of N.Y.*, 81 F. App'x 398, 400 (2d Cir. 2003)………………*passum*

*Manley v. AmBase Corp.,* 337 F.3d 237, 245 (2d Cir. 2003)…………………..25

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973)."……………………………………………………………………*passum*

*Moore v. T-Mobile USA, Inc.,* No. 14 CIV. 7724 GBD AJP, 2015 WL 1780942, at

*1 (S.D.N.Y. Apr. 15, 2015)…………………………………………………..26

*Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986)………………………………31

*Obra Pia Ltd. v. Seagrape Invs. LLC, No. 19-CV-7840 (RA), 2021 WL 1978545, at*

*2 (S.D.N.Y. May 18, 2021)…………………………………………...…..24

*Sass v. MTA Bus Co.,* 6 F. Supp. 3d 229, 233 (E.D.N.Y.)………………………..24

*Singh v. Home Depot U.S.A.,* Inc., 580 F. App'x 24, 25 (2d Cir. 2014)………..…31

*Snyder v. N.Y.S. Educ. Dep't*, 486 Fed. Appx. 176, 177 (2d Cir. 2012))………….25

*Stoma v. Miller Marine Servs.,* Inc., 271 F. Supp. 2d 429, 431 (E.D.N.Y. 2003).24

*Webb v. City of New York*, No. 08-CV-5145 (CBA) (JO), 2010 WL 3394537, at *3

(E.D.N.Y. Aug. 23, 2010)………………………………………………………30

# **STATUTES**

28 U.S.C. § 1291……………………………………………………..……....8

42 U.S.C. § 2000e et seq. ("Title VII")……………………………………8

Federal Rule of Civil Procedure Rule 56………………………………....20

Federal Rule of Civil Procedure Rule 59 (a) (1) A…………………………*passum*

Federal Rule of Civil Procedure Rule 60 (b) 3………………………………*passum*

Federal Rules of Appellate Procedure Rule 32(a)(7)(B)(iii)………………………4

U.S. Const. Seventh Amendment.......................................................................7,37

U.S. Const. Fourteenth Amendment………………………………….............36

# **BOOKS**

Henderson, The Background of the Seventh Amendment, 80 Harv. L. Rev. 289,

336 (1966)……………………………………………………………………..35

William C. Anderson (1891) Dictionary of Law ………………………...………33

Oliver Wendell Holmes (1881) The Common Law ……………….…….................36

# PRELIMANARY STATEMENT

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

U.S Seventh Amendment

Ms. Keisha Reynolds seeks a reversal of the "ORDER" dated March 15th, 2023, in Case 3:20-CV-00471 (MPS), in the District Court of Connecticut and, remand to the Lower Court, allowing an opposition, assisted by pro bono counsel to consistent with Ms. Reynold's Fourteenth Amendment. In the alternative, Ms. Reynolds seeks a remand for an evidential hearing by the Lower Court regarding the Rule 56.1 fact disclosure.

# DEEP ISSUES

Appellant (Ms. Reynolds) seeks reversal of Order and Opinion dated March 15th, 2023, A[1](14-38), from the lower court, the District Court of Connecticut based on misapplication of the law as stated under Federal Rule of Civil Procedure Rule 56, and the Rule's province or authority[2].

# JURISDICTIONAL STATEMENT

---

[1] (A -) refers to the Appellant's Appendix. Appellant counsel reached out to Appellee counsel, several times, for Appellee's designation of record to be included in this Appendix but she did not provide such designation for the record.

[2] Essentially, Appellant's argument is that the Lower Court overstepped its power and engaged in a full bench trial outside of Federal Rule of Civil Procedure Rule 56's mandate. Rule 56 allows a limited bench trial for the purposes of the Seventh Amendment. It does not abrogate the Seventh Amendment.

This is an appeal from final order of the district court dismissing Ms. Reynolds's claims by summary judgment. The finality is uncontroverted.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because the March 15th, 2023, decision is a final order or judgment that disposes of all parties' claims in Case No. 3:20-CV-00471 (MPS), *Herein after*, the "Order."

The district court had federal question jurisdiction over those claims pursuant to Federal Question jurisdiction 28 U.S.C. § 1331(a)(2) because Ms. Reynolds sued under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"),

On April 3rd, 2023, Ms. Reynolds filed a Notice of Appeal of the district court's decision, which granted defendant's motion for summary judgment. The appeal is timely because pursuant to Rule 4(a)(4)(A)(iv) of the Federal Rules of Appellate Procedure, the time to appeal the district court's Order had not expired when Ms. Reynolds filed a notice of Appeal on April 3rd, 2023. The clerk of the second circuit then stayed the appeal pending payment of fees. Mandate to reopen the case was granted by the Clerk of this Court on July 1st, 2024. Gen. Docket No. 3628017.

This appellate Court has jurisdiction pursuant to 28 U.S.C. § 1291 because the district court's March 15th, 2023, Order and Opinion constitutes a final order or judgment that dispose of all parties' claims in Case No. 3:20-CV-00471 (MPS).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

### QUESTIONS:

A. Whether the lower court failed to apply *stare decisis* on the issue of pro bono counsel?

B. Whether the court failed to interpret and apply the correct standard, and law, in disposing of Ms. Reynolds' claims under Rule 56?

C. Whether the court undermined Ms. Reynolds' Seventh Amendment.

### DEEP ISSUE

Should this court allow a trial judge to substitute the Seventh Amendment using Rule 56 as their vehicle?

### STATEMENT OF THE CASE

### A. The Nature of the Case

Ms. Keisha Reynolds brought he case against her former employer, HNS Management Co., Inc., d/b/a CTTRANSIT ("CT Transit"), alleging that CT Transit discriminated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. ECF No. 14 at 7, 10-11. Reynolds, who was terminated after she refused to attend a fitness for duty examination, claimed that CT Transit discriminated against her based on her religion and a perceived mental disability by requiring her to attend multiple fitness for duty examinations

and by terminating her when she failed to attend one of those examinations. *Id*. at 10-11. CT Transit was granted summary judgment on all of Ms. Reynolds's claims.

## B. The Course of Proceedings and Disposition Below

Defendants motion for summary judgment was granted.

However, local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement that contains separately numbered paragraphs corresponding to the paragraphs set forth in the moving party's Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party in each paragraph. D. Conn. L. Civ. R. 56(a)2. Each admission or denial must include a citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3.

In addition, the opposing party must submit a list of additional facts not included in the movant's Local Rule 56(a)1 Statement that it contends "establish genuine issues of material fact precluding judgment in favor of the moving party." D. Conn. L. Civ. R. 56(a)2. Reynolds, although was informed of this requirement by CT Transit when CT Transit filed its motion for summary judgment. See Notice to Self-Represented Litigant Concerning Motion for Summary Judgment, ECF No. 94.

## STATEMENT OF FACTS

CT Transit employed Reynolds as a bus operator in the Hartford Division for approximately seven years before her employment ended. Id. ¶ 1. CT Transit's bus operators are employed "to safely operate transit buses on routes throughout the Greater Hartford area," id. ¶ 8, and "certain medical conditions, including mental disorders, may prevent a [b]us [o]perator from meeting the requirements of the position," id.; ECF No. 93-5 at 4. Bus operators "are required by Federal Motor Carrier Regulations (49 CFR 391.41 - 391.49) to have a Connecticut Commercial Driver's License." ECF No. 93-2 ¶ 5; ECF No. 93-3 ¶ 7. And holders of Commercial Driver's Licenses (CDL's) must "maintain an up-to-date Medical Examiner's Certificate." ECF No. 93-2 ¶ 6; ECF No. 93-3 ¶ 8.

"When there is a concern about a Bus Operator's ability to safely operate a bus and perform the duties of the job because of a physical or mental health issue, CT Transit refers the employee for a fitness for duty evaluation." ECF No. 93-2 ¶ 9; ECF No. 93-3 ¶ 11.

Reynolds "completed a regular physical on or about December 27, 2016, which physical found that she was fit for duty and had no restrictions to her ability to operate a vehicle." Reynolds's Verified Complaint, ECF No. 14 at 7. "In or about October, 2018, [Reynolds] expressed . . . to her Union Representative" that

"she believed she had been followed by car thieves in her home town of Vernon, who may be interested in stealing her newly purchased vehicle." Id. at 8. "Within a few days of this conversation," Reynolds's manager informed her that "she could not return to regular work until she completed another physical." Id. Reynolds's manager "refused to explain why" CT Transit wanted Reynolds to complete another physical. *Id.* Reynolds attended "the physical on November 30, 2018" and was found "fit to return to work." Id. Reynolds claims that the medical provider who conducted the physical told her that "she had [n]o restrictions" but that CT Transit and Reynolds's union "were 'against her.'" *Id*. After this physical exam, Reynolds returned to work until she took "an approved one-week vacation" on October 14, 2019. *Id*.

While Reynolds was on vacation, CT Transit's Director of Human Resources, Catherine Gray, was informed on October 18, 2019, that Reynolds "saw demons" and believed that "demons were coming out of the Transportation Supervisor[']s ears, that a Bus Operator had demons[,] and the company was controlled by Free Masons." ECF No. 93-2 ¶ 10; ECF No. 93-3

¶ 12. After receiving this information, CT Transit became concerned "about [Reynolds's] ability to safely operate a bus and perform her job duties." ECF No. 93-2 ¶ 10; ECF No. 93-3 ¶ 12.

Reynolds returned from vacation on October 21, 2019, and was told she "could not return to her regular shift" until she met with Gray. ECF No. 14 at 8. Gray and Reynolds met that same day. ECF No. 93-2 ¶ 11; ECF No. 14 at 8-9. "[B]ased on the results of that communication," Gray told Reynolds that "she would be referred to the Employee Assistance Program for evaluation of her ability to safely perform the duties of a Bus Operator" and that Reynolds "would not be able to return to work until she was cleared." ECF No. 93-2 ¶ 11; ECF No. 93-3 ¶

Reynolds claimed that Gray "would not explain the reason" for the evaluation and that Gray told Reynolds she "had already completed and submitted paperwork on [Reynolds's] behalf seeking a leave from work under the Family Medical Leave Act." ECF No. 14 at 9. Reynolds also claimed that Gray made the appointment for Reynolds, giving Reynolds the "date, time and address of the office" at which the evaluation was to take place but not telling Reynolds that the evaluation was "actually a mental examination." *Id*. After Reynolds was referred to the Employee Assistance Program ("EAP"), Gray received "additional information. ECF No. 93-2 ¶ 12; ECF No. 93- 3 ¶ 14.2

When Reynolds arrived at her evaluation, "she learned for the first time that it was actually a mental examination" that was conducted by "Kerry L. Tuttle,

LCSW." ECF No. 14 at 9. Reynolds also learned that Gray had scheduled her for three "hour-long examinations." *Id*.

During the first examination, Tuttle primarily questioned Reynolds about "her religious beliefs and such beliefs' impact on her decision-making process." *Id*. After Reynolds's second examination, Reynolds claimed that Tuttle told her that she "would not be required to attend another session" and gave Reynolds "a form declaring her fit to return to work." *Id.* Reynolds submitted this form to CT Transit through her union representative "on or about October 28, 2019." *Id.*

### Ms. Reynolds Files An Employment Discrimination Claim

Reynolds filed a charge with the Equal Employment Opportunity Commission ("EEOC") **"on or about October 30, 2019," and she stopped receiving paychecks in November 2019**.

This EEOC complaint was directly related to the continued psychiatrist evaltions and that she "never received any direct correspondence from any employee or agent" of CT Transit after filing the EEOC Complaint. ECF No. 14 at 10. She also claims that she "was never formally terminated, and never received a reason or explanation for said termination." *Id*.

[The causal link between Ms. Reynolds EEOC complaint and internal complaints and the adverse work environment were the basis for Ms. Reynolds' retaliation claims having merit – and justifying, appointment of pro bono counsel. As well as Ms. Reynolds' disability discrimination claim. The facts at this point, correctly justified *pro bono* counsel in her favor. The prima facie case was established.]

On October 30, 2019, Gray was advised that Reynolds "had signed a release to allow disclosure of information" related to her EAP referral. ECF No. 93-2 ¶ 13; ECF No. 93-3 ¶ 15. As part of this disclosure, Gray received a letter from the President and CEO of The Lexington Group. ECF No. 93-2 ¶ 13; ECF No. 93-6 at 2. The Lexington Group is CT Transit's "employee assistance provider." ECF No. 93-7 at 2. The Lexington Group letter stated that Reynolds "was seen for an evaluation on October 24th and October 29th, 2019," that she "declined to schedule any further sessions," and that she should "be seen by a psychiatrist for a fitness for duty evaluation." ECF No. 93-6 at 2. At no point was Ms. Reynolds asked for her consent or opinion on the issue of psychiatric evaluation. No did Appellee link the stress to the many hours of over-time Ms. Reynolds had clocked for them, amounting to over $45,000 of unpaid overtime[3].

---

[3] This is an estimate based on Ms. Reynold's discovery.

After Gray received this letter, she scheduled Reynolds for "a fitness for duty examination with St. Francis Occupational Health for November 5, 2019, at 11:15 am." ECF No. 93-3 ¶ 16. Gray told Reynolds on October 30, 2019, that "prior to returning to work, she needed to attend a fitness for duty examination on November 5, 2019 that could be rescheduled if it was not convenient for her." *Id.*; ECF No. 14 at 9 (Reynolds alleging that "she received a call from Gray **informing her tha**t . . . she would . . . be required to attend another 'physical' with an unidentified doctor at St. Francis hospital in Hartford"). "Gray attempted to contact [Reynolds] by telephone to confirm her attendance at the November 5, 2019 examination but did not receive a response from [Reynolds]." ECF No. 93-2 ¶ 14; ECF No. 93-3 ¶ 16. Reynolds did not attend the November 5 fitness for duty examination or contact Gray about it. ECF No. 93-3 ¶ 17. Gray never acknowledged the two instances in which Ms. Reynolds was found to be fit for duty.

In accordance with "CT Transit's established policy and procedures," on November 11, 2019, Gray sent Reynolds a letter "informing her that she would be 'Medically Disqualified' if she did not complete the fitness for duty examination on or before December 2, 2019." ECF No. 93-2 ¶ 16; ECF No. 93-7 at 2-3. Gray's letter also asked Reynolds to contact Gray "as soon as possible to schedule a new

appointment with St. Francis." ECF No. 93-7 at 2. "Enclosed with the letter was a copy of the October 30, 2019 letter from [the Lexington Group] recommending the fitness for duty examination and [the] FMLA documents, including a Notice of Rights and Responsibilities and Certification of Health Care Provider, should [Reynolds] need a leave of absence under state or federal law." ECF No. 93-2 ¶ 16; ECF No. 93-7 at 4-11. The FMLA documents were partially filled out and did not constitute a completed FMLA leave application. See ECF No. 93-7 at 5-11; see also id. at 3 (Grey informing Reynolds in November 11, 2019 letter that although Reynolds had "not requested leave under the FMLA," Gray had "included the forms for your convenience in case you and your healthcare provider determine FMLA leave is needed"). Gray sent this letter via certified mail to Reynolds at P.O. Box 1711, Hartford, CT 06144-1711. ECF No. 93-7 at 2. After Gray sent this letter, Reynolds "did not contact" Gray and "did not submit a request for FMLA leave." ECF No. 93-2 ¶ 17; ECF No. 93-3 ¶ 19. Reynolds also did not reschedule or attend a fitness for duty examination. ECF 93-3 ¶ 19; ECF No. 93-8 at 2 (Gray writing in January 2020 that Reynolds had "not followed up with the physician at St. Francis" about her fitness for duty examination).

Gray sent a second letter to Reynolds on January 8, 2020. ECF No. 93-3 ¶ 20; ECF No. 93-8. In this letter, Gray informed Reynolds that "she was medically

disqualified from employment as a Bus Operator and removed from the employee roster." ECF No. 93-3 ¶ 20; ECF No. 93-8 at 2. Gray also noted that CT Transit had not "received any additional information" from Reynolds after sending the November 11, 2019 letter. ECF No. 93-8 at 2. Gray's second letter was also sent to Reynolds at P.O. Box 1711, Hartford, CT 06144-1711; the letter was returned to Gray as unclaimed on February 19, 2020. *Id*. at 4.

Finally, Reynolds claims that she was placed on FMLA leave "without [her] knowledge and consent." *Id*. at 2. Despite claiming that she never received any correspondence from CT Transit after filing her EEOC charge on October 30, 2019, Reynolds included with her original complaint part of Gray's November 11, 2019 letter. Compare ECF No. 1 at 75-83 (the second page of Gray's November letter, the Lexington Group letter, and the partially completed FMLA paperwork), with ECF No. 93-7 at 3-11 (same).

### Ms. Reynold's Court Appointed Counsel

Through counsel, Reynolds filed an Amended Complaint on November 5, 2020. ECF No. 14. **#1**, ( Crt Appointment).   This complaint asserted claims under the ADA and Title VII. ECF No. 14 at 10-11. After Reynolds's appointed counsel filed this complaint and served it on CT Transit, he declined to continue representing Reynolds. ECF No. <u>17</u>.

After CT Transit filed its answer, ECF No. 41. The court granted Reynolds's motion to appoint counsel for a mediation before a magistrate judge, ECF No. 37. Court then appointed counsel the opportunity to continue representing Reynolds after the mediation if he or she desired to do so. ECF No. 37. Counsel declined to represent Reynolds and instead withdrew from the bar of this Court. ECF No. 46. **#2** ( Crt Appointment).  The Court ten appointed new counsel for Reynolds, ECF No. 47, **#3**; That counsel moved to withdraw because Reynolds "evidenced a complete lack of trust" in counsel and refused to "share information or cooperate," such that counsel could not "proceed to a mediation or settlement conference in any meaningful manner." ECF No. 61 at 1; see also ECF No. 57 at 1 (Reynolds writing in a letter that appointed counsel was "insensitive," showed "no remorse towards [Reynolds's] situation," and was "badgering [Reynolds] with all these questions that are irrelevant"); ECF No. 63 at 1 (Reynolds writing in another letter that "[t]he assigned pro bono [a]ttorney . . . was never working in [her] favor" and that Reynolds "will 'never' get the representation [she] truly deserved from any Attorney in the state of Connecticut").

The court appointed new *pro bono* counsel for Reynolds to conduct a settlement conference. ECF No. 77. **#4**. When the settlement conference concluded, pro bono counsel withdrew his appearance. ECF No. 87.

19

CT Transit timely filed its motion for summary judgment on July 22, 2022. ECF No. 93. CT Transit also filed on the docket copies of the required notice to self-represented litigant concerning motions for summary judgment, Rule 56 of the Federal Rules of Civil Procedure, and Local Rule 56. ECF No. 94.3 Reynolds's response was due by September 7, 2022. ECF No. 97.

## Denial of Court Appointed Attorney

Reynolds requested Court appoint counsel to assist her in opposing CT Transit's motion for summary judgment on July 29, 2022. ECF Nos. 95-96. The Court denied this request on August 3, 2022.

After the court declined to appoint her counsel for the sixth time, Reynolds filed a letter on August 4, 2022, listing five attorneys that she claimed would not take her case. ECF No. 98 at 1-2. These attorneys were the same attorneys she claimed would not take her case when she initially sought counsel in 2020. See ECF No. 9 at 1 (listing the same five attorneys as ones that "did not take [her] case" when she first sought counsel). One week after her response was due, Reynolds filed a letter stating that she "cannot do [her] own motion for summary judgment" and that she was "still waiting to hear from the court what is their next step." ECF No. 99.

On May 28th, 2023, Ms. Reynolds suffered a house fire and had to move in to a friend's rental room.

## SUMMARY OF THE ARGUMENT

The lower court's decision should be reversed because the Lower Court misapplied Rule 56's legal standard by engaging in a full evidential trial; misapplied the principle of *stare decisis* and undermined Ms. Reynolds Seventh Amendment.

## STANDARD OF REVIEW

### Rule 56 Standard for Appellate Review

This Court reviews a misapplication of law under Rule 56, *denovo*.

## LEGAL STANDARD

"Summary judgment is appropriate *only if* the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (internal quotation marks and citations omitted). In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.,* 715 F.3d 417, 427 (2d Cir. 2013).

"A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp*. LLC, 737 F.3d 834, 843 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co*., 654 F.3d 347, 358 (2d Cir. 2011). "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Id*. (internal quotation marks omitted). "Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,* 373 F.3d 241, 242 (2d Cir. 2004).

## ARGUMENT

### I.  THE LOWER COURT ERRORED BECAUSE IT FAILED TO FOLLOW ITS OWN STARE DECISIS.

In its Order, the Lower Court never gave a reason why the five times of the *pro bono* appointments were abruptly abandoned, thus, reversing the initial finding

of merit awarding *pro bono* counsel for Ms. Reynolds. Once a court makes a judicial decision, its reversal of that decision is primed on acceptable jurisprudence, not mere "discretion." In other words, the court must be supported by the law for its nullification of nay dependency litigant has gained from previous pro bono counsel appointment, here – five times.

The Second Circuit's jurisprudence on horizontal *stare decisis* supports this legal premise:

Reliance is not only a contract principle but affects parties in any dispute. A court follows its own previous decisions regarding cases, because reliance has occurred as a result of horizontal *stare decisis*. The doctrine of stare decisis has two primary incantations: vertical stare decisis and horizontal stare decisis. *Matter of Arnold*, 198 Wash. App. 842, 396 P.3d 375 (2017), <u>rev'd,</u> 190 Wash. 2d 136, 410 P.3d 1133 (2018).

It is well-settled in before the Second Circuit Court of Appeals that one panel of that court is "bound by a decision of a prior panel unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or [by the Circuit Court] en banc." *United States v. Ianniello*, 808 F.2d 184, 190 (1986) (citing *In re Jaylaw Drug, Inc.*, 621 F.2d 524, 527 (2nd Cir.1980)). See also *City of Timber Lake v. Cheyenne River Sioux Tribe*, 10 F.3d 554, 557 (8th Cir.1993);

Finkel v. Stratton Corporation, 962 F.2d 169 (2nd Cir.1992) (the prior panel rule "does not apply where intervening Supreme Court decision casts doubt on the prior ruling.") Thus, the Circuit would focus less on the factual distinctions between *Riddervold* and *Barnhill*, and more on the effect of *Barnhill* on the rationale or reasoning of the *Riddervold* decision. *In re Arway*, 227 B.R. 216, 220 (Bankr. W.D.N.Y. 1998).

"Defendants also argue that plaintiff cannot challenge the actual malice rule because it has been **cemented as law of the case** and that, in any event, plaintiff must establish actual malice as a matter of state law. Defs' Opp. at 6. Because the Court rejects plaintiff's motion on <u>stare</u> <u>decisis</u> grounds, the Court does not reach these other arguments. *Palin v. New York Times Co.,* 482 F. Supp. 3d 208, 215 (S.D.N.Y.), <u>modified,</u> 510 F. Supp. 3d 21 (S.D.N.Y. 2020)." [ Emphasis added.]

When the United States Supreme Court or the Court of Appeals examines its own prior decisions, use of term "stare decisis," "horizontal stare decisis," or "horizontal precedence" refers to extent that such court is bound by its own earlier decision. *In re Arway*, 227 B.R. 216 (Bankr. W.D.N.Y. 1998).

Consequently, refusal to grant Ms. Reynolds a sixth *pro bono* counsel should be rejected on *stare decisis* grounds, which seduces promissory estoppel kind reliance. *In re Jaylaw Drug, Inc*., 621 F.2d 524, 527 (2nd Cir.1980)).

The expectation by Ms. Reynolds to be assisted by the court at the penultimate stage in perfecting her case, were based on her reliance of the court's initial help and the *stare decisis* nature of decisions regarding election of pro bono counsel. *In re Jaylaw Drug, Inc.*, 621 F.2d 524, 527 (2nd Cir.1980)). It became a vested right, which the court could not do away with by merely denying what it has previously granted and making the party who has no legal education or training now self-represented. *Id*. The decision by the Lower court abuses the law (not its discretion) because it ignored Ms. Reynolds reliance on the court's prior Orders electing *pro bono* counsel.

The question before this appeal's panel, is *whether a court loses its discretionary power to deny appointment of counsel when that issue becomes stare decisis, no longer discretionary?* The answer is yes.

Here, the court made an informed decision to grant *pro bono* counsel, not once, but five times in Ms. Reynolds favor. On the sixth time it denied the request. Appellant argues that this was legal error under the science of legal reasoning, guaranteeing that outcomes can be predicted under the principle of *stare decisis*. The court room is not a ship captained by the sitting judge, wherein the judge does as he pleases, when he pleases; regardless of how past decisions impacted litigants; regardless of past *prima facie* findings; and regardless of litigant's disabilities and

reliance[4]. Such decisions are not law, in its scientific sense, but decision making in the favor of one side, when it mattered the most.

Furthermore, even when the prior decision is sufficiently wrong to permit overruling, the law of stare decisis demands that this court consider countervailing reasons to nonetheless **\*58** adhere to the precedent. The law of *stare decisis* requires there be "special justification[ ]" to overrule an erroneous decision. *Burnett v. Smith*, 990 N.W.2d 289, 308 (Iowa 2023) (Christensen, C.J., concurring) (explaining there must be "special justifications beyond the belief that [precedents] were wrongly decided to warrant overruling them"); *Vaudt v. Wells Fargo Bank, N.A.*, 4 N.W.3d 45, 57–58 (Iowa 2024), <u>as amended</u> (May 9, 2024).

No special justifications were given here addressing the five instances warranting pro bono counsel, vis-à-vis, the one denial. The prediction by the Lower Court that Ms. Reynolds opposition would likely be "of no substance," was inappropriate and uncalled for. AA-22. It was active participation in the dispute, not neutral adjudication[5]. *Id.*

## II. THE LOWER COURT ERRED WHEN APPYING ITS BURDEN SHIFTING STANDARD UNDER MCDONNELL DOUGLAS CORP'S FOUTH PRONG.

---

[4] Ms. Reynolds's disability is too fold: her own stress related issues and lack of legal skills.

[5] The Lower Court cited *Hodges v. Police officers*, 802 F. 2d 58, 61 (2d Cir. 1986), but that case is certainly not an authority for reversing prior pro bono counsel appointments. Here, five times. It deals with the initial decision in deciding the first *pro bono* decision, a court makes. Once the court makes its first pro bono decision, the issue becomes precedential for the reasons it cites when making that first decision.

## a. ADA MCDONNELL STANDARD:

Discrimination in violation of the ADA is subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." Appellant will show that in various parts of the Lower Court's Order, the court's decision was based on failure to adduce facts on Ms. Reynold's behalf because of lack of advocacy on the fourth prong in *McDonnell*.

Consequently, the lack of advocacy of a rebuttal argument, did not nullify an issue but the issue survived summary judgment because Ms. Reynolds could adduce witnesses in a trial to fill the void caused by the lack of advocacy. The Lower court acknowledged in its Order, that the main issue regarding disability discrimination was whether the discriminatory intent exists or not and was triable. AA: 30-33.

*McDonnell* is only fatal, when a plaintiff has fully engaged in their case an has advocated; not when the court adjudicates a Rule <u>56</u>, without participation of the nonmovant[6]. *Id*. Here Ms. Reynolds did not submit her opposition papers in

---

[6] The very nature of McDonnell is active participation of litigants; not the substitution of one litigant by the bench. The Lower Court relied heavily on the wrong case *(McDonnell)* they should have based their decision on a case in which one party is absent from the proceedings, not *McDonnell*, which requires the active participation of both parties. The court, like here, advocating for Ms. Reynolds, who was not present was inappropriate. Ms. Reynolds rebuts squarely that she ever said she saw "demons," to anyone, regardless of the record.

opposition – the court cannot remedy this vacuum, by acting as her counsel, to her own detriment. This matter should proceed to a trial and be adjudicated on the issue of discriminatory intent under ADA, and retaliation. "Summary judgment is appropriate *only if* the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (internal quotation marks and citations omitted).

[ This issue is triable by a jury – whether or not the psychiatric appointments where discriminatory or pretextual? ]

The Lower Court changed a Rule 56 adjudication into a full bench trial on the issues, with Ms. Reynolds being absent. A court cannot use the adjudicative jurisdiction under Rule 56, to conduct a trial on discriminatory intent and retaliation (issues) outside of McDonnell stating what goes to trial. Once the Lower court had found that the fourth prong of *McDonnell* required Ms. Reynolds's participation, it had it set a trial date, considering her participation.

The Rule 56 adjudication did not even include the testimony of M.s Reynolds:

> At this stage, I must construe the facts in the light most favorable to Reynolds and must resolve all ambiguities and draw all reasonable inferences against CT Transit, and I must keep in mind that **"the showing the plaintiff must make as to the elements of the prima facie case in order to defeat a motion for summary judgment is de minimis."** *Cronin*

*v. Aetna Life Ins. Co.,* 46 F.3d 196, 203-04 (2d Cir. 1995) (internal quotation marks omitted).

AA: 29.

Ms. Reynolds, did not provide this *de minimus* evidence.

> "Under *McDonnell Douglas*, once [a] plaintiff establishes a prima facie case, a presumption arises that his employer unlawfully discriminated against him to rebut this presumption, the employer must come forward with admissible evidence of **legitimate nondiscriminatory reasons for its adverse actions toward plaintiff."** Mandell, 316 F.3d 368, 380 (2d Cir. 2003) (internal quotation marks and citation omitted).

AA: 30.

Here, the employer did not show that their policy has been applied to others equal to what Ms. Reynolds received, only treating Ms. Reynolds, as a class of one. Accordingly, the issue of discriminatory intent, incomplete at the McDonnell stage, survives summary judgment.

## b. RETALIATION CLAIM

Appellant repeats the above arguments, but also states that if allowed to oppose the summary judgment, and with the assistance of competent counsel she would adduce evidence in rebuttal consistent with Rule 56; thus, the claim of retaliation would survive summary judgment.

The Lower court found that M.s Reynolds' lack of facts were crucial to its decision

making as follows:

#1

Reynolds claims in her verified complaint that CT Transit would not explain why she was referred to the EAP and did not tell Reynolds that the evaluation was a mental examination, ECF No. 14 at 9. **But the relevant question at this stage is "what 'motivated the employer.'" McPherson v. New York City Dept. of Educ., 457 F.3d 211, 216 (2d Cir. 2006) (quoting United States Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716, (1983)).**

O'p. AA: 34

(Emphasis added).

*A fact-based position derived from plaintiff's opposition to summary*

*judgment*.

#2

As CT Transit notes, **Reynolds has offered no evidence establishing that its "proffered legitimate, nondiscriminatory reason for termination" is pretextual**. ECF No. 93-1 at 12. Further, there is no evidence in the record that anyone at CT Transit made remarks suggesting animus against Reynolds based on her religion or a perceived mental disability. Nor is there any evidence that Reynolds was treated differently from other similarly situated employees at CT Transit.

O'p. AA: 35

*Another fact based position, which required Ms. Reynolds active rebuttal in*

*opposition*.

#3

A **hostile work environment** claim requires a showing "[1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks omitted). A **plaintiff must demonstrate** "that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." Id. at 373-74. "This test has **objective and subjective elements**: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." Id. at 374 (internal quotation marks omitted). And as a general rule, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Id. (internal quotation marks omitted). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Id.*

O'pn. AA: 37.


*Another fact-based position, which required Ms. Reynolds active rebuttal in*

*opposition.*


# 4

Reynolds has failed to **raise a genuine dispute of material fact** as to her hostile work environment claim. The conduct she claims gives rise to a "religiously hostile work environment" is "Ms. Tuttle's two mental examination[s'] focus on the role of her beliefs in decision-making." ECF No. 14 at 10. Questioning an employee about her beliefs (religious or otherwise) is not a severe form of misconduct, and two such incidents, even when viewed together, are not pervasive enough to create an objectively hostile or abusive work environment. See, e.g., *Khan v. Fed. Reserve Bank of New York*, 02 CIV.8893(JCF), 2005 WL 273027, at *8 (S.D.N.Y. Feb. 2, 2005) (cartoon that "made fun of Muslims' clothing and beards" was "certainly not severe enough" to raise genuine dispute of material fact in support of hostile work environment claim); *Berrie v. Bd. of Educ. of Port*

*Chester-Rye Union Free Sch. Dist.,* 750 Fed.App'x. 41, 48 (2d Cir. 2018) (unpublished) (affirming summary judgement and finding that eleven incidents over a five-year period were not hostile or abusive); *Husser v. New York City Dept. of Educ.,* 137 F.Supp.3d 253, 259, 276 (E.D.N.Y. 2015) (granting summary judgment as to hostile work environment claim and finding "the twelve cited remarks and events over the course of a three-year period are not sufficiently pervasive"). Further, Reynolds alleges no remarks or other conduct that actually suggest religious bias or bias towards persons with disabilities.

O'pn. AA-27

*Another fact-based position, which required Ms. Reynolds active rebuttal in opposition.*

#5

Reynolds has also failed to show "**that a specific basis exists for imputing the objectionable conduct to the employer**." Alfano, 294 F.3d at 372.

[ Emphasis added]

O'pn. AA-38.

*Again, the Lower Court noted a lack of factual rebuttal as a concern. This was a basis for their decision.*

A court "shall grant summary judgment if the movant shows that there is **no genuine dispute** as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *Anderson v. Liberty Lobby Inc.*, 477 U.S.

242, 247-48 (1986). (Defendant failed to do this for the "retaliation claim" and thus summary judgment was denied for retaliation.)

Here, in #1-5, supra, the reasons for the Lower Court's decision in Appellee's favor were that Ms. Reynolds lacked facts for her support – not the meritless nature of her arguments, but the question of facts to support her position. Consequently, the decision by the lower Court to deprive her of *pro bono* counsel at the penultimate stage was the primary error and the fruit of that error is summary judgment in Appellee's favor. Summary judgment Appellee did not win fairly.

Ms. Reynolds was unable to fulfill her burden of proof during summary judgment because no opposition was submitted for her. It is unequivocal that appellant did not submit evidence to rebut appellee's position because she was self-represented. The reason given by the court in determining appellant's claims were squarely that self-representation negated advocacy:

> **Reynolds failed to contest CT Transit's Local Rule 56(a)1 statement and so all the facts in that statement supported by admissible evidence** — including all the facts I have recounted above — are admitted. **Nor has Reynolds submitted any evidence of her own except for her verified complaint**. Based on this record, I find that no reasonable juror could infer that CT Transit's decision to medically disqualify and terminate Reynolds was discriminatory.

> (Emphasis added).

> O'pn. AA: 33.

33

### III. THE LOWER COURT UNDEMRINED MS. REYNOLDS' SEVENTH AMENDMENT.

"We must give the benefit of every doubt to the judgment of the trial judge; **but surely there must be an upper limit**, and whether that has been surpassed is not a question of fact with respect to which reasonable men may differ, but a **question of law**." *Dagnello v. Long Island R. Co.*, 289 F.2d 797, 806 (C.A.2 1961) (quoted in Grunenthal, 393 U.S., at 159, 89 S.Ct., at 333). All other Circuits agree. See, e.g., *Holmes v. Elgin, Joliet & Eastern R. Co.*, 18 F.3d 1393, 1396 (C.A.7 1994); 11 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2820, p. 209 (2d ed. 1995). *Gasperini v. Ctr. for Humans., Inc.,* 518 U.S. 415, 435, 116 S. Ct. 2211, 2223, 135 L. Ed. 2d 659 (1996)

Here, the Lower Court, as a matter of law, went beyond its "upper limits," by setting an embedment for Ms. Reynolds to have a jury trial on her claims. *Id.*

The third possible course is the one which the Supreme Court has followed, on the whole, in preserving the substance of the common law trial by jury and particularly **the jury's power to decide serious questions of fact, while allowing rational modifications of procedure** in the interests of efficiency…Edith Guild

Henderson, The Background of the Seventh Amendment, 80 Harv. L. Rev. 289, 336 (1966)

In this matter before the appellate court, Judge Shea, the Lower Court judge has deprived Ms. Reynolds of her Seventh Amendment, by going beyond the

province of his Rule <u>56</u> mandate. The jury has the right, and indeed power, to adjudicate factual disputes that are beyond any judge's assessment of claims under any Rule of civil procedure. A judge cannot substitute himself as a trier of facts.

## REQUEST FOR ORAL ARGUEMENT:

Ms. Reynolds is requesting an oral argument pursuant to Local Rule 34.1(a) and Federal Rule of Appellate Practice Rule <u>34</u>.

## CONCLUSION

For the reasons set forth above, the Judgment of the District Court should be reversed and remanded for Ms. Reynolds to file an opposition with assistance of *pro bon*o court appointed counsel or for pre-trial consistent with the issues.

## SIGNATURE BLOCK

Dated:  October 8th 2024,                                    Respectfully Submitted,
         Washington, DC 20002


                                                    By <u>/s/Kissinger N. Sibanda Esq</u>
                                                    Dr. Kissinger N. Sibanda Esq
                                                    P.O. Box 714
                                                    Livingston, New Jersey 07039
THE LAW OFFICE OF KISSINGER                         Tel: 862-250-9684
N. SIBANDA, PLLC                                    *Attorney for Ms. Reynolds-Appellant*

## **CERTIFICATION THAT CASE HAS NO OTHER APPEALS**

Mr. Reynolds certifies that there are no other appeals in the Second Circuit involving this case and, in any Court, State or Federal.

**CERTIFICATE OF COMPLAINCE WITH**
**TYPE-VOLUME LIMITATION, TYPEFACE**
**REQUIREMENTS AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitation of Fed.R.App.P. 32 (a) 7

   (B) because this brief contains 7,397 words, excluding, the parts of the brief

   exempted by Fed.R.App.P.32(a)(7)(B)(iii).

2. This brief complies with typeface Requirements of Fed.R.App.P. 32 (a) 5 and

   the type style requirements because it has been prepared using windows 11 in

   Times New Roman 14 pt.

Dated:  October 8th, 2024
         Washington DC

                                        /s/ Kissinger N. Sibanda Esq
                              _____
                                        Dr. Kissinger N. Sibanda, Esq

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

Keisha Reynolds,

*Plaintiff-Appellant*,                                                  24-484

v.

HNS Management Co., Inc, DBA CTTransit,

*Defendant-Appellee*.

-------------------------------------------------------

## CERTIFICATE OF SERVICE

I hereby certify that on October 8th, 2024, I electronically filed Brief for Appellant with the Clerk of the United States Court of Appeals by using the Appellate ACMS. I further certify that all participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ACMS system. Finally, I certify that six copies of hardcopy of the foregoing were sent via certified mail to the clerk of the court.

   Dated: October 8th, 2024                          /s/Kissinger N. Sibanda
                                                  Dr. Kissinger N. Sibanda, Esq