# 23-00484-cv

## United States Court of Appeals
### *for the*
### Second Circuit

KEISHA REYNOLDS,

*Plaintiff-Appellant,*

— v. —

HNS MANAGEMENT CO., INC, DBA CTTransit, CT Transit,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

## BRIEF FOR DEFENDANTS-APPELLEES

SARAH R. SKUBAS
ADAM J. LYKE
JACKSON LEWIS P.C.
*Attorneys for Defendants-Appellees*
90 State House Square, 8th Floor
Hartford, Connecticut 06103
(860) 522-0404

CP COUNSEL PRESS    (800) 4-APPEAL • (333826)

## Rule 26.1 Corporate Disclosure Statement

Defendant-Appellee HNS Management Company d/b/a CT Transit ("CT Transit") hereby states that its correct legal name is H.N.S. Management Company, Inc. It further states that it is a non-governmental entity. H.N.S. Management Company, Inc. is a wholly owned subsidiary of RATP Dev USA. RATP Dev is the parent company of RATP Dev USA. RATP Group is the parent company of RATP Dev. No publicly held corporation owns 10% or more of its stock.

# Table of Contents

**RULE 26.1 CORPORATE DISCLOSURE STATEMENT** ...................... i

**TABLE OF AUTHORITIES** .........................................................iii

**JURISDICTIONAL STATEMENT** ........................................... 1

**COUNTER-STATEMENT OF THE ISSUE ON APPEAL** ..................... 2

**COUNTER-STATEMENT OF THE CASE** ................................ 2

**COUNTER-STATEMENT OF FACTS** ...................................... 4

    **A.**    **Factual Background** ................................................... 4

    **B.**    **Procedural History** ................................................... 8

**ARGUMENT** ................................................................. 11

    **A.**    **Standard of Review** ................................................ 11

    **B.**    **The District Court Correctly Exercised Its Discretion in Declining To Appoint Pro Bono Counsel** ............................. 12

    **C.**    **The District Court Correctly Granted Summary Judgment On Plaintiff's ADA And Title VII Claims.** .......................... 19

        **1.**    **The Trial Court properly utilized the McDonnell Douglas Standard.** ..................................... 21

        **2.**    **The Trial Court correctly held that Defendant demonstrated a legitimate nondiscriminatory reason for Plaintiff's termination that Plaintiff could not prove was pretextual.** .................................. 23

    **D.**    **Rule 56 of the Federal Rules of Civil Procedure Does Not Violate the Seventh Amendment.** ........................................ 27

    **E.**    **The Trial Court Properly Granted Summary Judgment on Plaintiff's Hostile Work Environment Claims.** .................... 29

**CONCLUSION** ............................................................... 29

**CERTIFICATE OF COMPLIANCE** ...................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abrams v. Dep't of Public Safety*,
  764 F.3d 244 (2d Cir. 2014) ................................................................25

*Arway v. Mt. St. Mary's Hosp. (In re Arway)*,
  227 B.R. 216 (Bankr. W.D.N.Y. 1998) .............................................15

*Bailey v. N.Y. Law Sch.*,
  No. 19-3473, 2021 U.S. App. LEXIS 34926 (2d Cir. Nov. 24, 2021) ...............28

*Bickerstaff v. Vassar Coll.*,
  196 F.3d 435 (2d Cir. 1999), *amended on other grounds*,
  No. 98-7702, 1999 U.S. App. LEXIS 34520 (2d Cir. Dec. 22, 1999)................19

*Brown v. Eli Lilly & Co.*,
  654 F.3d 347 (2d Cir. 2011) ................................................................19

*Butler v. Washington Metropolitan Area Transit Authority*,
  275 F. Supp. 3d 70 (D.C. Cir. 2017) .................................................24

*Carona v. United States Bureau of Prisons*,
  243 F.3d 629 (2d Cir. 2001) ...............................................................13

*City of Timber Lake v. Cheyenne River Sioux Tribe*,
  10 F.3d 554 (8th Cir. 1993) ................................................................15

*Cooper v. A. Sargenti Co.*,
  877 F.2d 170 (2d Cir. 1989) ........................................................ 13, 14

*Crawford-Mulley v. Corning, Inc.*,
  194 F. Supp. 2d 212 (W.D.N.Y. 2002) ............................................25

*Deabes v. Gen. Nutrition Corp.*,
  No. 3:08-CV-372 (WWE), 2010 U.S. Dist. LEXIS 31532 (D. Conn.
  Mar. 31, 2010), *aff'd*, 415 F. App'x 334 (2d Cir. 2011) .....................25

*Fid. & Deposit Co. v. United States*,
  187 U.S. 315 (1902) ...........................................................................28

*Finkel v. Stratton Corp.*,
  962 F.2d 169 (2d Cir. 1992) ...............................................................15

*Fox v. Costco Wholesale Corp.*,
    918 F.3d 65 (2d Cir. 2019) ...................................................................21

*Guggenheim Cap., LLC v. Birnbaum*,
    722 F.3d 444 (2d Cir. 2013) .................................................................13

*Hendricks v. Coughlin*,
    114 F.3d 390 (2d Cir. 1997) .................................................................14

*Hicks v. Baines*,
    593 F.3d 159 (2d Cir. 2010) .................................................................19

*Hodge v. Police Officers*,
    802 F.2d 58 (2d Cir. 1986) ........................................................... 11, 18

*In re Jaylaw Drug, Inc.*,
    621 F.2d 524 (2d Cir. 1980) ......................................................... 15, 16

*In re Pers. Restraint of Arnold*,
    190 Wash. 2d 136 (2018) ....................................................................15

*In re Pers. Restraint of Arnold*,
    198 Wash. App. 842 (2017) .................................................................15

*Kelleher v. Fred A. Cook, Inc.*,
    939 F.3d 465 (2d Cir. 2019) .................................................................20

*Levitant v. City of N.Y. Human Res. Admin.*,
    558 F. App'x 26 (2d Cir. 2014).............................................................21

*Lue v. JPMorgan Chase & Co.*,
    768 F. App'x 7 (2d Cir. 2019)....................................................... 12, 21

*Mandell v. Cty. Of Suffolk & John Gallagher*,
    316 F.3d 368 (2d Cir. 2003) ......................................................... 20, 21

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973) .......................20

*McElwee v. Cty. of Orange*,
    700 F.3d 635 (2d Cir. 2012) ......................................................... 12, 19

*McMillan v. City of N.Y.*,
    711 F.3d 120 (2d Cir. 2013) .................................................................20

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013) ......................................................... 12, 19

iv

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ......................................................................15

*Nieves v. Angelo, Gordon & Co.*,
    341 Fed. App'x 676 (2d Cir. 2009) ...............................................24

*Palin v. N.Y. Times Co.*,
    482 F. Supp. 3d 208 (S.D.N.Y. 2020).............................................15

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979) ......................................................................28

*Paulini v. City of New York*,
    No. 15 Civ. 7059 (CM), 2016 U.S. Dist. LEXIS 140183 (S.D.N.Y.
    Oct. 7, 2016) .................................................................................14

*Preston v. Bristol Hospital*,
    645 F. App'x 17 (2d Cir. 2016).......................................................26

*Saunders v. New Horizons Comput. Learning Ctr.*,
    68 F. App'x 224 (2d Cir. 2003).......................................................11

*Saviano v. Local 32B-32J, SEIU*,
    75 F. App'x 58 (2d Cir. 2003).........................................................13

*Schnabel v. Abramson*,
    232 F.3d 83 (2d Cir. 2000) ...................................................... 21, 24

*Shannon v. Verizon N.Y. Inc.*,
    No. 1:05-CV-0555 (LEK/DRH), 2009 U.S. Dist. LEXIS 45160
    (N.D.N.Y. May 29, 2009).................................................................24

*Silver v. Entergy Nuclear Operations, Inc.*,
    290 F. Supp. 3d 234 (S.D.N.Y. 2017).............................................24

*Soderberg v. Gunther Int'l, Inc.*,
    124 F. App'x 30 (2d Cir. 2005)........................................................25

*United States v. Ianniello*,
    808 F.2d 184 (2d Cir. 1986) ...........................................................15

*United States v. Serr*,
    No. 22-2058-cr, 2023 U.S. App. LEXIS 26310 (2d Cir. Oct. 4, 2023) ..............11

*Van Zant v. KLM Royalty Dutch Airlines*,
    80 F.3d 708 (2d Cir. 1996) .............................................................25

*Vt. Teddy Bear Co. v. 1-800 Beargram Co.*,
   373 F.3d 241 (2d Cir. 2004) ...............................................12

**Statutes & Other Authorities:**

18 U.S.C. § 1161 .................................................................15

28 U.S.C. § 1291 ...................................................................1

28 U.S.C. § 1331 ...................................................................1

28 U.S.C. § 1915 .................................................................12

42 U.S.C. § 2000e ....................................................... *passim*

42 U.S.C. § 2000e-2 .............................................................20

42 U.S.C. § 12101 ....................................................... *passim*

42 U.S.C. § 12112 .................................................................20

49 C.F.R. 391.41 .................................................................4, 5

49 C.F.R. 391.42 ...................................................................4

49 C.F.R. 391.43 ...................................................................4

49 C.F.R. 391.44 ...................................................................4

49 C.F.R. 391.45 ...................................................................4

49 C.F.R. 391.46 ...................................................................4

49 C.F.R. 391.47 ...................................................................4

49 C.F.R. 391.48 ...................................................................4

49 C.F.R. 391.49 ...................................................................4

Fed. R. Civ. P. 56 ...................................................... 10, 27, 28

Fed. R. Civ. P. 56(a) ............................................................19

D. Conn. L. Civ. R. 83.10(c) ........................................... 12, 13

# <u>JURISDICTIONAL STATEMENT</u>

On March 15, 2023, the District Court (Shea, M.) issued a ruling granting in full the motion for summary judgment filed by Defendant HNS Management Co., Inc. as to Plaintiff Keisha Reynolds's claims of discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., against Defendant HNS Management Co., Inc. AA-015-039.[1]

The District Court had subject matter jurisdiction over Plaintiff's Title VII and ADA claims pursuant to 28 U.S.C. § 1331.

The District Court entered Judgment for CT Transit on March 16, 2023. AA-013. The Judgment disposed of all of Plaintiff's claims against CT Transit. Plaintiff timely filed her notice of appeal on April 3, 2023. AA-014. This Court has jurisdiction over Plaintiff's appeal pursuant to 28 U.S.C. § 1291.

---

[1] For ease of reference, citations to the Plaintiff's Appendix will be referred to as "AA." Citations to Defendant's Supplemental Appendix will be referred to as "SA." Citations to Plaintiff's Brief will be to "Pl. Br."

## COUNTER-STATEMENT OF THE ISSUE ON APPEAL

Whether the District Court (Shea, M.) properly granted Defendant's Motion for Summary Judgment on Plaintiff's Title VII and ADA claims because Defendant demonstrated there were no genuine issues of material fact as to Plaintiff's disparate treatment and hostile work environment claims related to her claimed disability and religious beliefs and Defendant was entitled to judgment as a matter of law.

## COUNTER-STATEMENT OF THE CASE

This case arises from Plaintiff's medical disqualification as a Bus Operator for CT Transit based on her failure to participate in a fitness for duty examination on or before December 2, 2019.  On November 5, 2020, Plaintiff filed an Amended Complaint, with the assistance of pro bono counsel, asserting claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e ("Title VII"), and for disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA").[2]  Plaintiff alleges she was discriminated against when Defendant requested that she participate in a fitness for duty examination and that she was then wrongfully terminated based on her religion and perceived disability under Title VII and the ADA.  Defendant filed an Answer and Affirmative Defenses on December 4, 2020.  Doc. 21.

---

[2] Plaintiff originally filed her pro se Complaint in April 2020, but the pleading was largely unintelligible and was not served.  Thereafter, the District Court appointed counsel to assist her with filing an Amended Complaint and serving it in accordance with Rule 4.

Defendant moved for summary judgment on the following grounds: (1) Plaintiff cannot establish a prima facie case of discrimination with respect to her claims concerning the fitness for duty examination because that request does not constitute an "adverse job action" under Title VII and the ADA; and (2) Defendant had a legitimate business reason to medically disqualify Plaintiff and terminate her employment when she did not participate in the fitness for duty examination on or before December 2, 2019. Supplemental Appendix ("SA")-17, Doc. 93. In doing so, it also filed a Notice to Self-Represented Litigant Concerning Motion for Summary Judgment. SA-59[3], Doc. 94.

During the course of the litigation, Plaintiff sought and was provided with pro bono counsel to assist her in drafting her complaint and to represent her at a mediation on four occasions. SA-1, Doc. 11; SA-14, Doc. 39; SA-15, Doc. 47; SA-16, Doc. 77. Each time, the Trial Court ruled that the appointment was temporary. *Id.* The Trial Court denied assistance on her Motion for Summary Judgment, without prejudice. AA-040. She declined to file any Opposition, or to address the Trial Court's reasons for initially denying her pro bono counsel to respond to the Motion for Summary Judgment. AA-041. The Trial Court (Shea, M.), then

---

[3] Contrary to Plaintiff's assertion, Pl. Br. p. 7 n.1, her counsel did not reach out to Defendant's counsel for its designation of documents to be included in the Appendix. Thus, Defendant submits herewith its own Supplemental Appendix pursuant to Local Rule of Appellate Procedure 30.1.

considered the record before it, including her Verified Complaint, and granted summary judgment for Defendant, dismissing the case.  AA-039.

## COUNTER-STATEMENT OF FACTS

### A.     Factual Background

Defendant, CT Transit, operates local express bus services in the Hartford, New Haven and Stamford areas.  CT Transit employs approximately 1,240 full and part-time employees throughout Connecticut.  See SA-25, Ex. A, Affidavit of Catherine Gray ("Gray Aff."), ¶ 4.  Plaintiff, Keisha Reynolds, was employed as a Bus Operator by CT Transit for approximately seven (7) years in the Hartford Division.  *See* SA-25, Ex. A, Gray Aff., ¶ 3.  The Bus Operators employed by CT Transit, including Plaintiff during her employment, are represented by Local 425 of the Amalgamated Transit Union ("ATU").  *See* SA-25, Ex. A, Gray Aff., ¶ 5.

Bus Operators are required by Federal Motor Carrier Regulations (49 CFR 391.41–391.49) to have a Connecticut Commercial Driver's License (Class A or B) with certain endorsements including a P for passenger vehicle and either an S, V, F or A endorsement, and to maintain an up-to-date Medical Examiner's Certificate. *See* SA-25, Ex. A, Gray Aff., ¶ 7; 49 CFR 391.41 – 391.49.  A copy of the Job Description and Physical Requirements for Bus Operators at CT Transit applicable to Plaintiff's employment is attached as Exhibit C.  See SA-25, Ex. A, Gray Aff., ¶ 9.

4

The general function of a Bus Operator in the Hartford division is to safely operate transit buses on routes throughout the Greater Hartford area.  *See* SA-25, Ex. A, Gray Aff., ¶ 10; SA-35, Ex. C, pg. 1.  On page 3 of the Job Description and Physical Requirements, the physical requirements for the position include certain emotional/psychological factors based on the requirement that Bus Operators interact with the public for up to 90% of their workday.  *See* SA-25, Ex. A, Gray Aff., ¶ 10; SA-35, Ex. C, pg. 3.  In addition, certain medical conditions, including mental disorders, may prevent a Bus Operator from meeting the requirements of the position.  See SA-35, Ex. C, pg. 3; 49 CFR 391.41.  *See* SA-25, Ex. A, Gray Aff., ¶ 10.

When there is a concern about a Bus Operator's ability to safely operate a bus and perform the duties of the job because of a physical or mental health issue, CT Transit refers the employee for a fitness for duty examination.  *See* SA-25, Ex. A, Gray Aff., ¶ 11.  On October 18, 2019, Catherine Gray, Director of Human Resources, received reports that that Plaintiff claimed she saw demons, that demons were coming out of the Transportation Supervisor's ears, that a Bus Operator had demons and the company was controlled by Free Masons.  *See* SA-25, Ex. A, Gray Aff., ¶ 12.  This caused CT Transit to be concerned about Plaintiff's ability to safely operate a bus and perform her job duties.  *See* SA-25, Ex. A, Gray Aff., ¶ 12.

Ms. Gray met with Plaintiff on October 21, 2019, along with the HR Support Specialist. *See* SA-25, Ex. A, Gray Aff., ¶ 13. Based on the results of that communication with Plaintiff, Ms. Gray informed Plaintiff that she would be referred to the Employee Assistance Program for evaluation of her ability to safely perform the duties of a Bus Operator, and that she would not be able to return to work until she was cleared. *Id*. After the referral to EAP, Ms. Gray was provided with additional information which confirmed the concerns about whether Plaintiff could safely operate a bus and perform her job duties based upon a possible mental disorder. *See* SA-25, Ex. A, Gray Aff., ¶ 14.

On October 30, 2019, Nicole Parsons, CEAP, SAP, of The Lexington Group, Inc., advised Ms. Gray that Plaintiff had signed a release to allow disclosure of information, was seen for evaluations on October 24 and October 29, 2019, but then declined further sessions. *See* SA-25, Ex. A, Gray Aff., ¶ 15. Exhibit D is a true and accurate copy of the letter from Ms. Parsons to Ms. Gray, dated October 30, 2019. *See* SA-25, Ex. A, Gray Aff., ¶ 15. In the letter, Ms. Parsons stated "it is recommended that Ms. Reynolds be seen by a psychiatrist for a fitness for duty evaluation." *See* SA-39, Ex. D.

Based on the information obtained by Ms. Gray and the recommendation of Ms. Parsons, Ms. Gray scheduled a fitness for duty examination with St. Francis Occupational Health for November 5, 2019, at 11:15 am. *See* SA-25, Ex. A, Gray

Aff., ¶ 16.  Ms. Gray informed Plaintiff on October 30, 2019, that prior to returning to work, Plaintiff needed to attend a fitness for duty examination on November 5, 2019, that could be rescheduled if it was not convenient for her.  *See* SA-25, Ex. A, Gray Aff., ¶ 16.  Ms. Gray attempted to contact Plaintiff by telephone to confirm her attendance at the November 5, 2019 examination but did not receive a response from Plaintiff.  *See* SA-25, Ex. A, Gray Aff., ¶ 16.

Plaintiff did not report for the fitness for duty examination on November 5, 2019, nor did she contact Ms. Gray.  *See* SA-25, Ex. A, Gray Aff., ¶ 17.  Pursuant to CT Transit's established policy and procedures, Ms. Gray sent Plaintiff a letter, dated November 11, 2019, informing her that she would be "Medically Disqualified" if she did not complete the fitness for duty examination on or before December 2, 2019.  *See* SA-25, Ex. A, Gray Aff., ¶ 18; SA-41, Ex. E.  Per the letter, Plaintiff was instructed to contact the Director of Human Resources to schedule a new examination.  *See* SA-41, Ex. E.  Enclosed with the letter was a copy of the October 30, 2019 letter from Ms. Parsons recommending the fitness for duty examination and FMLA documents, including a Notice of Rights and Responsibilities and Certification of Health Care Provider, should Plaintiff need a leave of absence under state or federal law.  *See* SA-25, Ex. A, Gray Aff., ¶ 18; SA-41, Ex. E.

Plaintiff did not respond to Ms. Gray.  *See* SA-25, Ex. A, Gray Aff., ¶ 19. Plaintiff did not contact the Director of Human Resources, did not attend a fitness

for duty examination and did not submit a request for FMLA leave. *See* SA-25, Ex. A, Gray Aff., ¶ 19. Therefore, on January 8, 2020, Ms. Gray sent a letter to Plaintiff to inform her that she was medically disqualified from employment as a Bus Operator and removed from the employee roster. *See* SA-25, Ex. A, Gray Aff., ¶ 20; SA-55, Ex. F. Neither Plaintiff nor her union challenged the Medical Disqualification pursuant to the provisions of the Collective Bargaining Agreement. *See* SA-25, Ex. A, Gray Aff., ¶ 21.

## B. Procedural History

On or about October 30, 2019, Plaintiff brought an EEOC charge, which the EEOC dismissed on February 18, 2020. Plaintiff brought the present action on April 6, 2020. Plaintiff filed an Amended Complaint on November 5, 2020, with assistance of pro bono counsel. SA-1, Doc. 11; SA-2, Doc. 14. In the Amended Complaint she asserted claims for religious discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e ("Title VII"), and for disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA").[4] SA-2, Doc. 14. Plaintiff alleges she was discriminated against when Defendant requested that she participate in a fitness for duty examination and that she was then wrongfully terminated based on her religion and perceived disability under Title VII and the

---

[4] Plaintiff's April, 2020 pro se Complaint was largely unintelligible and was not served. Thereafter, the District Court appointed counsel to assist her with filing an Amended Complaint and serving it in accordance with Rule 4.

ADA. *Id.* Defendant filed an Answer and Affirmative Defenses on December 4, 2020. Doc. 21.

Defendant moved for summary judgment on the following grounds: (1) Plaintiff cannot establish a prima facie case of discrimination with respect to her claims concerning the fitness for duty examination because that request does not constitute an "adverse job action" under Title VII and the ADA; and (2) Defendant had a legitimate business reason to medically disqualify Plaintiff and terminate her employment when she did not participate in the fitness for duty examination on or before December 2, 2019. SA-17, Doc. 93. In doing so, it also filed a Notice to self-Represented Litigant Concerning Motion for Summary Judgment. SA-59, Doc. 94.

During the course of the litigation, Plaintiff sought and was provided with pro bono counsel on four occasions, to assist her in drafting her complaint and to represent her at a mediation. SA-1, Doc. 11; SA-14, Doc. 39; SA-15, Doc. 47; SA-16, Doc. 77. Each time, the Trial Court ruled that the appointment was temporary. *Id.* Each time, counsel was given the opportunity to continue the representation if they chose, but they declined. *Id.* The Trial Court denied assistance on Plaintiff's Motion for Summary Judgment, without prejudice. AA-040. She declined to file any Opposition or to address the Court's reasons for denying her request for assistance. AA-041. The Trial Court (Shea, M.), then considered the record before

it, including her sworn Complaint, and granted summary judgment for Defendant, dismissing the case.  AA-039.

## SUMMARY OF ARGUMENT

This Court should affirm the District Court's Ruling granting Defendant's motion for summary judgment.  While Plaintiff frames the issues in broad terms of *stare decisis* and whether Rule 56 of the Federal Rules of Civil Procedure violates the Seventh Amendment to the U.S. Constitution, in fact, the issues are whether the District Court properly exercised its discretion in denying Plaintiff an additional pro bono counsel appointment and whether Defendant demonstrated the lack of any genuine issue of material fact and its entitlement to judgment as a matter of law. This Court should uphold the District Court on both grounds.

The District Court properly exercised its discretion in denying Plaintiff further assistance of counsel, considering the unlikelihood of success and Plaintiff's failure to demonstrate she had sought counsel on her own.  The District Court then afforded Plaintiff significant leeway in carefully considering whether Defendant had met its burden of proof on summary judgment.  In doing so it afforded Plaintiff the benefit of the doubt at every opportunity.  It did not grant the Motion purely based on Plaintiff's failure to respond, and it considered any statements in the Complaint as to which Plaintiff had personal knowledge as evidence.  Nonetheless, it determined that Defendant had a legitimate nondiscriminatory reason for requesting a fitness for

duty examination based on Plaintiff's hallucinations and conspiracy theories involving demons. It then further determined that Plaintiff's failure to attend the fitness for duty examination constituted a legitimate nondiscriminatory reason for terminating her employment, which Plaintiff could not demonstrate was a pretext for discrimination.

## ARGUMENT

### A.    Standard of Review

The decision of whether to appoint counsel for indigent parties is subject to review for abuse of discretion. "Broad discretion lies with the district judge in deciding whether to appoint counsel pursuant to this provision. . . . But that does not mean that a court can do whatever it pleases. A court must exercise its discretion in accordance with sound legal principles, and its decision is subject to review for abuse of that discretion." *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986), *citing Saunders v. New Horizons Comput. Learning Ctr.*, 68 F. App'x 224, 226 (2d Cir. 2003). "A district court has abused its discretion when it has '(1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions.'" *United States v. Serr*, No. 22-2058-cr, 2023 U.S. App. LEXIS 26310, at *2 (2d Cir. Oct. 4, 2023)

This Court reviews *de novo* a district court's grant of summary judgment, construing the evidence in the light most favorable to the non-moving party and drawing all *reasonable* inferences therefrom. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108 (2d Cir. 2013). It "may affirm summary judgment on any ground supported by the record, even if it is not one on which the district court relied." *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). "Where a motion for summary judgment is unopposed, summary judgment is proper only if the court is satisfied that the moving party has met its burden with sufficient support in the record evidence." *Lue v. JPMorgan Chase & Co.*, 768 F. App'x 7, 10 (2d Cir. 2019), *citing Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

**B.** **The District Court Correctly Exercised Its Discretion in Declining To Appoint Pro Bono Counsel**

Pursuant to 28 USC § 1915, "(1) The court may request an attorney to represent any person unable to afford counsel." Similarly, in the District of Connecticut, Local Civil Rule 83.10(c) provides:

> Pro bono counsel may be appointed at the discretion of the presiding judge upon motion or on the initiative of the presiding judge when the judge determines that the appointment will serve the interests of justice based upon factors such as (a) a party's apparent ability or inability to afford legal counsel, (b) the likelihood that counsel may be secured under alternative fee arrangements, and (c) the apparent merit of the party's claims or defenses.

D. Conn. L. Civ. R. 83.10 (c). Notwithstanding these provisions, "it is well-settled that, except when faced with the prospect of imprisonment, a litigant has no legal right to counsel in civil cases." *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 453 (2d Cir. 2013). "[C]ourts should not grant such applications indiscriminately. Volunteer lawyer time is a precious commodity. Courts are given a major role in its distribution. Because this resource is available in only limited quantity, every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989). "[E]ven though a claim may not be characterized as frivolous, counsel should not be appointed in a case where the merits of the . . . claim are thin and his chances of prevailing are therefore poor." *Carona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001).

As a threshold matter, "[t]he indigent [must] be unable to obtain counsel before appointment will even be considered." *Saviano v. Local 32B-32J, SEIU*, 75 F. App'x 58, 59 (2d Cir. 2003) (upholding trial court decision where plaintiff did not "describe any efforts he undertook to retain counsel"), citing *Cooper,* 877 F.2d at 173. After they have done so, "the district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-

examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination." *Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997). "[A]ppointment of *pro bono* counsel must be done judiciously in order to preserve the 'precious commodity' of volunteer lawyers for those litigants who truly need a lawyer's assistance." *Paulini v. City of New York*, No. 15 Civ. 7059 (CM), 2016 U.S. Dist. LEXIS 140183, at *3 (S.D.N.Y. Oct. 7, 2016) (quoting *Cooper*, 877 F.2d at 172–73).

Plaintiff claims that the Trial Court "abruptly abandoned" its pro bono appointments. Pl. Br., p. 22–23. In fact, the Trial Court specifically stated when it made the appointments that each appointment was for a limited purpose, and that when that purpose was done, the appointment would end unless the pro bono attorney chose to continue. SA-1, Doc. 11; SA-14, Doc. 39; SA-15, Doc. 47; SA-16, Doc. 77. When each limited purpose ended, the appointed attorneys chose not to continue the representation, as allowed for by the Trial Court's Order.

Contrary to Plaintiff's claims, *stare decisis* does not require the Court to grant all future requests for pro bono counsel after granting it once. *See* Pl. Br., p. 23–25. The cases cited by Plaintiff applied *stare decisis* in very different situations, involving legal interpretations, standards, or principles that were controlling law,

rather than discretionary determinations by a trial court. In *United States v. Ianniello*, 808 F.2d 184, 190 (2d Cir. 1986), this Court held that the prior holding of another panel that "two predicate acts can suffice to satisfy the pattern requirement of RICO" was binding "unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or this court en banc."[5] In *In re Jaylaw Drug, Inc.*, 621 F.2d 524, 527 (2d Cir. 1980), it held that a prior decision allowing collection of interest on a tax debt from a bankruptcy petitioner after the petitioner's discharge was binding. Another case Plaintiff cites, *Finkel v. Stratton Corp.*, 962 F.2d 169, 175 (2d Cir. 1992) concerned whether § 17(a) of the Securities Act of 1933 allows for a private right of action.[6]

Here, the Trial Court did not overrule a legal interpretation, standard, or principle. Rather, it applied the same legal standards and principles to a different

---

[5] Plaintiff cites to an overturned Wisconsin Appellate Division case, *In re Pers. Restraint of Arnold*, 198 Wash. App. 842, 848 (2017), about the nature of vertical stare decisis and horizontal stare decisis. This case is, of course, not binding on this Court, and little help to Plaintiff in that on appeal, the Wisconsin Supreme Court reversed, holding that horizontal stare decisis did not apply to the Appellate Division because the "current system of rigorous debate at the intermediate appellate level creates the best structure for the development of Washington common law." *In re Pers. Restraint of Arnold*, 190 Wash. 2d 136, 154 (2018).

[6] Similarly, in *City of Timber Lake v. Cheyenne River Sioux Tribe*, 10 F.3d 554, 558 (8th Cir. 1993), a panel of the Eighth Circuit considered *stare decisis* principles when it analyzed the extent of tribal authority to regulate liquor traffic within reservations pursuant to 18 U.S.C. § 1161. Likewise, in *Arway v. Mt. St. Mary's Hosp. (In re Arway)*, 227 B.R. 216, 218 (Bankr. W.D.N.Y. 1998), the bankruptcy court analyzed whether a prior Supreme Court case or a Second Circuit case controlled as to the proper interpretation of a section of the bankruptcy code. In *Palin v. N.Y. Times Co.*, 482 F. Supp. 3d 208, 214 (S.D.N.Y. 2020), a District Court judge held it could not overturn the United States Supreme Court's holding in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

situation and arrived at a different result. The Trial Court's prior appointments of counsel were for different purposes—drafting a Complaint and assisting with mediation. This appeal is taken from its decision not to appoint counsel to draft a response to a summary judgment motion. Thus, *stare decisis* is not applicable.

Plaintiff also references her supposed reliance on the Trial Court's prior orders. Pl. Br., p. 23, 25. She cites *In re Jaylaw Drug, Inc.*, 621 F.2d at 524 for this assertion, but that case does not discuss "reliance" or "vested rights," as she claims. Thus, she has not articulated why "reliance" in this context provides a ground for this Court to overturn the Trial Court.[7] Furthermore, any such reliance would be unreasonable for two reasons. First, again, the Trial Court's Orders appointing pro bono counsel stated that each appointment was limited to drafting the complaint and assisting with the mediation. Second, the Trial Court was careful to address any potential reliance by issuing orders that clearly informed Plaintiff that she would not obtain pro bono counsel for the response to the Motion for Summary Judgment. AA-023; AA-040. It also confirmed that Defendant had filed the required Notice to Self-Represented Litigant Concerning Motion for Summary Judgment. AA-023; SA-59, Doc. 94.

---

[7] Defendant acknowledges there are situations where reliance will be taken into account by a Court in determining whether it is bound by stare decisis to follow a prior decision but maintains that this is not one of them.

Plaintiff does not address either of the grounds stated by the Court in its decision to deny pro bono counsel. The Court stated two grounds for denying appointment of counsel. AA-040. First, that Plaintiff had not demonstrated any further attempts to seek counsel on her own, and second, that the Court did not see sufficient likelihood of success. AA-040.

In denying her motion to appoint counsel, the Trial Court held that "[t]he plaintiff does not indicate that she has made any attempts to obtain legal assistance on her own." AA-040. In response, Plaintiff filed a letter "listing five attorneys that she claimed would not take her case." AA-023, n.4. The Trial Court noted that "[t]hese attorneys were the same attorneys she claimed would not take her case when she initially sought counsel in 2020." *Id*. Thus, it concluded that Plaintiff "did not, therefore, include any information about counsel she sought to assist her with her summary judgment response." *Id*. In her brief to this Court, Plaintiff does not contend that she sought assistance from counsel with her summary judgment response. *See* Pl. Br., p. 20 (acknowledging attorneys listed were "the same attorneys she claimed would not take her case when she initially sought counsel in 2020" and pointing to nothing suggesting she had specifically sought their assistance again with respect to the motion for summary judgment), 25–26 (no analysis of requirement that Plaintiff show she attempted to obtain legal assistance).

The Trial Court also held that Plaintiff was unlikely to succeed on the merits. Of note, because the Trial Court had already ordered an attorney to assist Plaintiff in crafting her Amended Complaint, Plaintiff had Counsel's assistance in framing her claims and thus an opportunity to present any merit that existed. Further, the Court did not state that Plaintiff's position "would likely be 'of no substance'" as Plaintiff claims in her brief. Pl. Br., p. 26. Rather, it held that it "could not conclude that her 'position was likely to be of substance,'" quoting the controlling standard from *Hodge*, 802 F.2d at 61. AA-023. Plaintiff claims that making this determination was overstepping when it was exactly the determination that the Trial Court was required to make.

The Trial Court's analysis of this issue is also informed by the context of its docket as a whole. Specifically, the number of pro bono attorneys available and the need for pro bono attorneys. It is important for Trial Courts to analyze the merits of cases when determining whether to appoint counsel so indigent parties that bring meritorious cases can obtain representation. Assigning a pro bono counsel to draft a response to a motion for summary judgment—which is a time-consuming endeavor—means that pro bono counsel is not available to take other matters.

For the foregoing reasons, the Court properly exercised its jurisdiction in denying Plaintiff's request for appointment of pro bono counsel.

## C.     The District Court Correctly Granted Summary Judgment On Plaintiff's ADA And Title VII Claims.

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108 (2d Cir. 2013), *citing* Fed. R. Civ. P. 56(a). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), *see also Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) ("mere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist") (internal quotation marks and citation omitted); *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999) ("an inference is not a suspicion or a guess") (internal quotation marks omitted), *amended on other grounds*, No. 98-7702, 1999 U.S. App. LEXIS 34520 (2d Cir. Dec. 22, 1999).

Plaintiff claims violations of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act. Pursuant to Title VII, "[i]t shall be an unlawful employment practice for an employer—(1) to … discharge any individual, or otherwise to discriminate against any individual … because of such individual's …

religion … ." 42 U.S.C.S. § 2000e-2. Likewise, the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to ... advancement, or discharge of employees … and other terms, conditions, and privileges of employment." 42 U.S.C.S. § 12112.

Claims under both the ADA and Title VII are analyzed using the McDonell Douglas burden-shifting framework. *See Mandell v. Cty. Of Suffolk & John Gallagher*, 316 F.3d 368, 377 (2d Cir. 2003) ("[R]eligious discrimination claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)."); *McMillan v. City of N.Y.*, 711 F.3d 120, 125 (2d Cir. 2013) ("Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in McDonnell Douglas ….").

This requires first that the plaintiff establish a prima facie case, then the burden shifts to the defendant to "come forward with admissible evidence of legitimate nondiscriminatory reasons for its adverse actions toward plaintiff." *Mandell*, 316 F.3d at 380, *see also McMillan*, 711 F.3d at 125; *Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 468 (2d Cir. 2019). "The purpose of this burden-shifting is to discourage dismissal of employment discrimination claims without an employer having to set forth a legitimate reason for the adverse action." *Kelleher*, 939 F.3d at 468.

After the defendant articulates a legitimate nondiscriminatory reason, "the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the real reason for the adverse employment decision was discrimination." *Mandell*, 316 F.3d at 381. This is also referred to as proving "that [the employer's] assigned reason . . . was a pretext or discriminatory in its application." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019). In other words, the plaintiff bears the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000).

### 1. The Trial Court properly utilized the McDonnell Douglas Standard.

Plaintiff asserts that the Trial Court should have utilized a different standard rather than the McDonnell Douglas standard. Pl. Br., p. 27–30. She does not articulate a different standard that should have been used, and her reasoning does not account for how the standard for granting summary judgment allocates the burden on the moving party. This Court has previously upheld unopposed motions for summary judgment utilizing the *McDonnell Douglas* standard, provided it has been "satisfied that the moving party has met its burden with sufficient support in the record evidence." *Lue v. JPMorgan Chase & Co.*, 768 F. App'x 7, 10 (2d Cir. 2019); *Levitant v. City of N.Y. Human Res. Admin.*, 558 F. App'x 26, 28 (2d Cir. 2014).

The Trial Court's decision properly required that the Defendant meet its burden of showing no genuine issue of material fact entitling it to judgment as a matter of law. AA-024. Using the McDonnell Douglas standard in the context of the summary judgment standard is the proper way to analyze whether Defendant was entitled to summary judgment. The Trial Court correctly cited the standard for moving for summary judgment, noting that the burden was on the movant, that it must construe facts in the light most favorable to the non-movant and resolve all ambiguities and draw all reasonable inferences against the movant. AA-024. It analyzed evidence submitted by Defendant in determining that Defendant had established a legitimate nondiscriminatory reason for the termination, and thus met its burden on that stage of the *McDonnell Douglas* test. AA-031–33. It then viewed all the evidence, including Plaintiff's Verified Complaint, in determining that "no reasonable juror could infer that CT Transit's decision to medically disqualify and terminate Reynolds was discriminatory." AA-33–037. Again, that determination is in line with the *McDonnell Douglas* and summary judgment standards.

Plaintiff claims that the Court could not grant summary judgment without Plaintiff's "active rebuttal in opposition." Pl. Brief, p. 29–31.[8] The Court does not, however, need the Plaintiff to present evidence to rule against the Plaintiff. Rather,

---

[8] Plaintiff references a claim for "retaliation" when discussing the McDonnell Douglas standard, but no allegation of retaliation was made in her Complaint. SA-8, Doc. 14.

it needs to provide the Plaintiff with the *opportunity* to present evidence. It did this in multiple ways. It described the summary judgment process at a hearing; it ensured that Defendants filed the required Notice to Self-Represented Litigants; it considered Plaintiff's motion for appointment of pro bono counsel; and it denied the motion for appointment of pro bono counsel without prejudice to Plaintiff moving again, but Plaintiff declined to do so. AA-023; AA-040; SA-59, Doc. 94. Thus, Plaintiff had the opportunity to present evidence but did not utilize that opportunity. Furthermore, as described above, the Trial Court held to the established standard placing the initial burden on the moving party—the Defendant—to prove the absence of any genuine issue of material fact and its entitlement to summary judgment.

## 2. The Trial Court correctly held that Defendant demonstrated a legitimate nondiscriminatory reason for Plaintiff's termination that Plaintiff could not prove was pretextual.

The Trial Court correctly concluded that it was undisputed Plaintiff did not participate in the fitness for duty examination requested by CT Transit, and thus she was medically disqualified and terminated as a bus oiperator. AA-033; *see* SA-25, Ex. A, Gray Affidavit, ¶¶ 18-20. That she was not medically qualified to work as a Bus Operator qualifies as a legitimate non-discriminatory reason for her termination. Thus, Defendant satisfied its burden of demonstrating the existence of a legitimate nondiscriminatory reason and that Plaintiff could not demonstrate said reason was pretextual.

An employer can terminate an employee for not following an employer's instructions or requests related to job duties or requirements. *See Nieves v. Angelo, Gordon & Co.*, 341 Fed. App'x 676, 679 (2d Cir. 2009) ("the record demonstrates that Nieves was terminated due to her insubordination and failure to complete assigned tasks"); *Schnabel v. Abramson*, 232 F.3d 83, 87-89 (2d Cir. 2000) (difficulty following instructions, insubordination, and inept performance were legitimate nondiscriminatory grounds for termination). Thus, an employee's failure to abide by an employer's basic request or procedures related to job qualifications— such as attending a fitness for duty examination or submitting information to demonstrate medical qualifications for a job—is a legitimate reason for termination. *See Silver v. Entergy Nuclear Operations, Inc.*, 290 F.Supp.3d 234, 244-46 (S.D.N.Y. 2017) (employee's failure to meet psychological standards required for position is a legitimate non-discriminatory reason for termination); *Butler v. Washington Metropolitan Area Transit Authority*, 275 F.Supp.3d 70, 84 (D.C. Cir. 2017) (termination of a bus operator for refusal to submit to medical test demonstrating qualifications for the position is a legitimate non-discriminatory reason for termination); *Shannon v. Verizon N.Y. Inc.*, No. 1:05-CV-0555 (LEK/DRH), 2009 U.S. Dist. LEXIS 45160, at *12 (N.D.N.Y. May 29, 2009) (summary judgment granted where employee failed to submit to mental fitness for duty test).

To prove pretext, Plaintiff must demonstrate the employer's stated reason is false or not the real reason for termination with admissible evidence. *Abrams v. Dep't of Public Safety*, 764 F.3d 244, 251 (2d Cir. 2014); *Van Zant v. KLM Royalty Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (plaintiff must produce sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by defendant were false and that more likely than not discrimination was the real reason for the employer's decision). A plaintiff may not establish pretext through mere speculation or criticism of the challenged decision. *Crawford-Mulley v. Corning, Inc.*, 194 F. Supp. 2d 212, 220 (W.D.N.Y. 2002); *see also Deabes v. Gen. Nutrition Corp.*, No. 3:08-CV-372 (WWE), 2010 U.S. Dist. LEXIS 31532, *8 (D. Conn. Mar. 31, 2010), *aff'd*, 415 F. App'x 334 (2d Cir. 2011) ("an employer may take an adverse employment action for a bad reason or a reason based on erroneous facts" so long as the reason is not discriminatory or retaliatory); *Soderberg v. Gunther Int'l, Inc.*, 124 F. App'x 30, 32 (2d Cir. 2005) ("it is not the function of a fact-finder to second-guess business decisions regarding what the employer constitutes satisfactory work performance")(internal quotation marks omitted).

In the present action there is no question that the decision to medically disqualify Plaintiff and terminate Plaintiff was solely because she did not participate in the fitness for duty examination. *See* SA-25, Ex. A, Gray Affidavit, ¶¶ 18-20. Plaintiff was given notice of that intended action by virtue of the letter sent on

November 11, 2019. *See* SA-25, Ex. A, Gray Affidavit, ¶ 18; SA-41, Ex. E. Plaintiff was advised that her status would be changed to "Medical Disqualification" if she did not complete the fitness for duty physical at St. Francis on or before December 2, 2019. *See* SA-41, Ex. E. She did not contact CT Transit about the exam, participate in the examination, or request FMLA prior to that date. *See* SA-25, Ex. A, Gray Affidavit, ¶ 19. Plaintiff, through her union, had the ability to challenge any medical disqualification pursuant to the provisions of the Collective Bargaining Agreement and did not take such action. *See* SA-25, Ex. A, Gray Affidavit, ¶ 19; SA-31, Ex. B. Thus, her termination on January 8, 2020, based on her medical disqualification for not participating in the fitness for duty examination was certainly justified under the circumstances and nondiscriminatory.

Where, as here, pretext cannot be established as to the proffered legitimate, nondiscriminatory reason for termination, the Trial Court properly granted summary judgment to CT Transit. *See Preston v. Bristol Hospital*, 645 Fed. App'x 17, 21 (2d Cir. 2016) ("assuming that Preston could establish her prima facie case as to any claim, we agree with the district court that she has not submitted evidence from which a reasonable jury could find that the proffered reason for the termination (which is undisputed) was pretext for discrimination or retaliation."). The Trial Court went so far as to credit Reynolds claims that "CT Transit would not explain why she was referred to the EAP and did not tell Reynolds that the evaluation was a

mental examination." AA-034. Nonetheless, it held that "no reasonable juror could infer from them that [Defendant's] reason for referring [Plaintiff] to the EAP and preventing her from working until she was cleared to safely operate a bus was discriminatory or based on animus about her religious beliefs or any disability." *Id.*

The Trial Court also noted that it was Plaintiff's own failure to attend a fitness for duty examination that precipitated her termination, and that there was "no evidence in the record that anyone at CT Transit made remarks suggesting animus against Reynolds based on her religion or a perceived mental disability." AA-036. It concluded that "viewing the record in the light most favorable to Reynolds, no reasonable juror could infer that it was more likely than not that CT Transit acted with discriminatory intent." AA-037. It also concluded that a reasonable juror could not "conclude that CT Transit's proffered explanation for [Plaintiff's] termination … is pretextual." AA-037.

Accordingly, summary judgment was properly granted on Plaintiff's claims under Title VII and the ADA because her failure to participate in the fitness for duty examination was a legitimate non-discriminatory reason for her termination that she could not establish was pretextual.

### D. Rule 56 of the Federal Rules of Civil Procedure Does Not Violate the Seventh Amendment.

Plaintiff appears to claim that Rule 56 of the Federal Rules of Civil Procedure violates the Seventh Amendment to the United States Constitution. Pl. Br. 34. This

may be merely a restatement of her claim that Judge Shea failed to properly apply the summary judgment standard. Nonetheless, it should be noted that many courts have concluded that Rule 56 is consistent with the Seventh Amendment.

"[M]any procedural devices developed since 1791 that have diminished the civil jury's historic domain have been found not to be inconsistent with the Seventh Amendment." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979). In *Fid. & Deposit Co. v. United States*, 187 U.S. 315, 320 (1902), the Supreme Court analyzed a claim that a predecessor to the modern version of Rule 56 violated the right to trial by jury:

> If it were true that the rule deprived the plaintiff in error of the right of trial by jury, we should pronounce it void without reference to cases. But it does not do so. It prescribes the means of making an issue. The issue made as prescribed, the right of trial by jury accrues. The purpose of the rule is to preserve the court from frivolous defences and to defeat attempts to use formal pleading as means to delay the recovery of just demands.

*Fid. & Deposit Co. v. United States*, 187 U.S. 315, 320 (1902), *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336, 99 S. Ct. 645, 654 (1979 (citing *Fid. & Deposit Co.* for proposition that "summary judgment does not violate the Seventh Amendment"). As this Court recently held, "there is no absolute right to a jury trial. Where no genuine issue of material fact exists, the court may, without violating Seventh Amendment rights, grant summary judgment . . . ." *Bailey v. N.Y. Law Sch.*, No. 19-3473, 2021 U.S. App. LEXIS 34926, at *6 (2d Cir. Nov. 24, 2021).

### E. The Trial Court Properly Granted Summary Judgment on Plaintiff's Hostile Work Environment Claims.

Plaintiff does not appear to challenge the Trial Court's decision on the Hostile Work Environment Claim. Plaintiff's Brief contains no reference to this claim or analysis of this issue. The Trial Court properly concluded that a therapist questioning Plaintiff about her religious beliefs during two medical examinations held outside of the workplace does not constitute a hostile work environment. AA-037–39.

## CONCLUSION

For the reasons stated above, this Court should affirm the decision of the District Court granting summary judgment in favor of Defendant and dismissing Plaintiff's Complaint.

Respectfully submitted,

*/s/ Sarah R. Skubas*
Sarah R. Skubas
Adam J. Lyke
JACKSON LEWIS P.C.
90 State House Square
Hartford, CT 06103
(860) 522-0404
Sarah.Skubas@jacksonlewis.com
Adam.Lyke@jacksonlewis.com
*Attorneys for Defendant-Appellee*

**Certificate Of Compliance**
**With Type-Volume Limitation, Typeface Requirements, and**
**Type Style Requirements**

1.  Pursuant to the Federal Rules of Appellate Procedure, I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i), excluding the parts of the brief exempted by Fed. R. App. P. 32(f), because this brief contains 7,518 words, as established by the word count of the computer program used for preparation of this brief.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Professional Edition 2016 in 14-point Times New Roman font.